## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| KARTHIK SARAVANAN | : CIVIL ACTION |
| | : |
| v. | : |
| | : NO. 17-3409 |
| DREXEL UNIVERSITY | : |
| | : |

## MEMORANDUM

**KEARNEY, J.**                                                                          **October 10, 2017**

A male South Asian college freshman of the Indian race challenging Drexel University's decision to expel him for stalking and sexually harassing a female freshman student with whom he was having a personal relationship must allege more than repeated conclusions blaming the expulsion decision on discriminatory animus because of his gender, race and national origin. After investigation, the University's adjudicatory disciplinary body sanctioned both freshmen but expelled him for stalking and sexual harassment. He now claims expelling him is unfair when the University did not expel his former friend. But he dresses his unfairness argument in a 275 paragraph civil rights complaint rife with scandalous conclusions regarding the college's investigation, adjudication and expulsion after finding student-on-student stalking and sexual harassment. To proceed, we require the former student to allege facts evidencing some plausible basis to proceed challenging the University's decisions as motivated by discriminatory intent or animus. Notwithstanding his lengthy complaint, absent allegations of the University's discriminatory intent or animus based on his gender, race or national origin leading to his alleged injuries, we grant the University's motion to dismiss. In the accompanying Order, we dismiss his unwieldy complaint but allow him one last chance to amend, if he can in good faith, to plead facts of discriminatory intent and animus necessary to proceed on civil rights claims.

## I.     Alleged facts

Philadelphian Karthik Saravanan is a member of the Indian race with South Asian national origin.[1] He enrolled at Drexel University in 2015.[2] Mr. Saravanan's claims seem to arise from a failed personal relationship with a white female coed ("J.K.") he met while enrolled as a freshman at the University.[3] He claims on August 18, 2015, J.K. provided him alcohol and sexually assaulted him after he "became intoxicated as well as incapacitated."[4] Mr. Saravanan claims J.K. "admits to the rape" in a Snapchat.[5]

Mr. Saravanan claims after the August 18, 2015 incident, J.K. "harassed him to the extent that [University] became a pervasively hostile environment for him."[6] J.K. allegedly threatened to falsely tell his peers "he is mentally ill and/or gay" if he talked about the sexual assault with anyone, even his therapist.[7] Mr. Saravanan claims the "pervasive threatening conduct" continued until J.K.'s "pre-emptive and falsely stated complaint that [Mr. Saravanan] was harassing her because he was threatening to commit suicide."[8] J.K. allegedly inflicted physical abuse on Mr. Saravanan, including "slapping him hard on the face on at least three times on campus, May 5, July 28, and December 23, 2016 – basically every time [he] told [J.K.] he would disclose the rape to his therapist."[9] Mr. Saravanan claims he served "as her chauffer to and from her work" and bought her clothes from August 18, 2015 through August 16, 2016 "[a]s a result of [her] pervasive sexual hostility."[10] J.K. "spent one year threatening [Mr. Saravanan] into silence" and when Mr. Saravanan "broke his silence" on August 15, 2016, she reported he "created a hostile environment" for her to University's Counseling Center and University's Office of Equality and Diversity.[11] He claims choosing "[The University], in part, because [it] specifically represented it had a reputation for a due process-driven sexual complaint system and for dealing with racial oppression that guaranteed all, including men of color like him, a voice and equal treatment."[12]

2

Approximately a year after meeting, Mr. Saravanan and J.K. sought mutual protection from abuse orders in state court on August 22, 2016.[13] Mr. Saravanan and J.K. filed sworn statements about the alleged sexual assault in state court. Mr. Saravanan alleges J.K. "never denied the sexual assault charge [he] leveled against her nor did she deny her other physical violence against [him]."[14] J.K. allegedly flaunted her protection from abuse order by "continuing to appear in [Mr. Saravanan's] vicinity."[15]

On August 15, 2016, J.K. reported Mr. Saravanan threatened to commit suicide and "was disturbing her."[16] Mr. Saravanan claims J.K. reported to the University "a few hours, maybe a day, after [he] told [her] he would tell his therapist and her parents that she had raped him."[17] Mr. Saravanan allegedly "reported this assault twice" and claims "twice [the University] discriminated against him for so reporting."[18] It is unclear when Mr. Saravanan reported the assault, but he claims he "attempted to file a report that he had been sexually assaulted well before the [protection from abuse order]."[19] The University conducted an investigation and adjudication into both Mr. Saravanan and J.K.'s claims.[20]

The University issued him an interim suspension notice on August 16, 2016.[21] The University also allegedly posted a flyer on its campus with Mr. Saravanan's photograph, name, date of birth, and student identification number "and called him harasser and stalker of women."[22] Mr. Saravanan claims "[The University] does not prosecute male rape, that it only prosecutes rape where the alleged victim is female, and that it favors whites over minorities in all cases" and "[The University] treated him differently from other white students responding to sexual stalking like [J.K.], and detrimentally because of his race and national origin."[23]

Mr. Saravanan does not plead the length and extent of the University's investigation and adjudication process. On December 1, 2016, several of the University's representatives

3

interviewed Mr. Saravanan and he claims they "demonstrated overt racist biases against [his] race" and "made a number of statements that clearly suggest their animosity against [him] [...] and implicitly doing this because of their biased arcane assumption that in sexual terms a man cannot be assault by a woman."[24] Mr. Saravanan claims neither he nor "the adjudicators never saw an original document of the investigation of these claims; all they saw was a hearsay report, never a handwritten or even a signed statement from any witness."[25] Mr. Saravanan alleges the University conducted a disciplinary adjudication on February 16, 2017, but it is unclear what occurred during this proceeding.[26]

At the conclusion of the University's investigation and adjudication procedures, the University found Mr. Saravanan guilty of sexual harassment and stalking.[27] He received a sanction of expulsion on March 20, 2017 while University placed J.K. on disciplinary probation.[28] On April 17, 2017 Judge Carolyn Engel Temin, Appeal Adjudicator, reviewed the University's sanctions stating: Saravanan was given a sanction of Expulsion from the University effective March 20, 2017. [J.K.] was given a sanction of Disciplinary Probation made retroactively effective to run from August 25, 2015 to August 25, 2016. Since the sanction was imposed on March 20, 2017, it was, in effect, no sanction at all."[29]

Mr. Saravanan then filed this case with 275 paragraphs and 56 pages alleging the University: (1) violated Title IX through reverse discrimination, (2) violated Title IX through deliberate indifference to sexual assault, (3) violated Title VI, (4) violated Section 1981, (5) breached a contract based on its policies and procedures, (6) breached the covenant of good faith and fair dealing, (7) alternatively breached a contract established through estoppel and reliance, (8) engaged in unfair and deceptive trade practices, (9) negligence, and (10) negligent infliction of emotional distress. Mr. Saravanan claims University discriminated against him on the basis of

4

his sex and race during his adjudication.

## II. Analysis

The University argues we must dismiss this largely repetitive complaint because Mr. Saravanan, despite 275 allegations, fails to state a federal claim. We agree he fails to presently plead his federal claims.[30] Absent a question of federal law, we will not exercise supplemental jurisdiction over his remaining breach of contract and unfair trade practices act claims. As he may be able to marshal some facts to establish a federal claim, we grant him leave to amend to focus his allegations and possibly plead a claim in good faith.

### A. Mr. Saravanan does not allege facts showing the University discriminated against him on the basis of sex as required under Title IX.

Mr. Saravanan alleges the University's actions before, during, and after the disciplinary hearing constituted discrimination on the basis of his gender. He strives to plead four Title IX theories: (1) erroneous outcome, (2) selective enforcement, (3) archaic assumptions, and (4) deliberate indifference.[31]

Under Title IX of the Education Act Amendments of 1972, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[32] Title IX prohibits universities from imposing "discipline where gender is a motivating factor in the decision to discipline."[33] In bringing a Title IX claim, a plaintiff must allege facts he was discriminated against *because of sex*.[34] Recitation of "conclusory assertions" is insufficient in claiming discrimination on the basis of race or sex against a university.[35]

#### 1. We find Mr. Saravanan has not pleaded facts to support erroneous outcome theory.

Mr. Saravanan claims the University's bias against his male gender resulted in the erroneous outcome of the disciplinary proceedings against him.[36]

5

A plaintiff in an erroneous outcome case typically alleges he is "innocent and wrongly found to have committed an offense."[37] Mere allegations a flawed proceeding "led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination" does not satisfy an erroneous outcome claim.[38] A plaintiff must allege "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding."[39] Facts in an erroneous outcome claim can include, "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender."[40]

Mr. Saravanan fails to specifically allege the University's alleged bias against his gender led to an erroneous finding against him. Mr. Saravanan adequately alleges the University conducted an investigation and adjudicatory proceeding resulting in an adverse outcome against him,[41] but he fails to plead the outcome resulted from the University's bias against his gender. Allegations a disciplinary proceeding "led to an adverse and erroneous outcome" coupled with blanket allegations of discrimination are insufficient to allege the University imposed the punishment because of Mr. Saravanan's race and sex under erroneous outcome theory.[42] Statements by university officials or members of the tribunal or patterns of discrimination in the past can indicate circumstances suggesting bias under erroneous outcome theory.[43] Mr. Saravanan cites to no statements by University's officials or members of University's disciplinary tribunal suggesting gender bias influenced the outcome of his disciplinary proceedings. Mr. Saravanan alleges no facts to support a presumption of a past pattern of gender discrimination by University in similar proceedings.

Mr. Saravanan instead seems to rely on a number of conclusory statements about his claimed discrimination without referencing facts – or not clearly referencing facts –

6

demonstrating the University discriminated against him on the basis of his sex or race.

He refers to the University's alleged gender and/or racial biases over thirty times in the Complaint.[44] Mr. Saravanan concludes the University "bias[ed] the process against the plaintiff, a male of color, because of the animus of its staff" without concisely pleading facts demonstrating the University based its acts or omissions against Mr. Saravanan based on his race or sex. Mr. Saravanan alleges a non-exhaustive list of the University's discriminatory actions against him including: (1) failure to conduct an adequate and impartial investigation; (b) improper advice and advocacy on J.K.'s behalf only; (c) assumption of guilt from the male; (d) assumption a female cannot rape a male; (e) credibility and evidentiary weight assessments always favored J.K.; (f) denial of his right to examine and correct the file; (g) failure to afford him the required presumption of innocence required by the preponderance of the evidence standard; (f) unwarranted, unduly severe, and outrageously disparate sanction.[45] While Mr. Saravanan has adequately plead that he is a different sex than J.K., he does not allege facts the University implemented the disciplinary actions against him before, during, or after the adjudicatory period because of his sex as required by Title IX.[46]

Mr. Saravanan does not allege a Title IX claim against the University based on an erroneous outcome theory.

**2. Mr. Saravanan has not pleaded facts to support selective enforcement theory.**

Mr. Saravanan alleges the University's disciplinary proceedings and severity of his punishment constituted selective enforcement violating Title IX.[47]

A plaintiff in a selective enforcement case must demonstrate "regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender."[48] A male plaintiff must allege "a female was in circumstances

7

sufficiently similar to his own and was treated more favorably" by the university.[49] He must include "circumstances suggesting that gender bias was a motivating factor behind the inconsistency" in the university's disciplinary proceedings.[50]

Mr. Saravanan's selective enforcement claim seems to allege he, a male, received a different and more severe punishment than J.K., a female.[51] Comparison of Mr. Saravanan's and J.K.'s punishment alone is improper in assessing a claim of selective enforcement.[52] In *Yusuf v. Vassar College*, the court dismissed a selective enforcement theory claim when plaintiff, a Bengali male, received a greater punishment for sexual harassment than a white male who physically attacked the plaintiff.[53] The court found the plaintiff did not allege facts indicating a bias on the basis of gender and, at best, the facts allege the white male's disciplinary panel "displayed an unusual tolerance of physical violence," which does not indicate selective enforcement.[54]

The University found Mr. Saravanan culpable of "sexual harassment and stalking,"[55] a different course of conduct than the sexual assault he accused J.K. of committing.[56] Mr. Saravanan received a markedly different punishment than J.K.: "Saravanan was given a sanction of Expulsion from the University effective March 20, 2017. J.K. was given a sanction of Disciplinary Probation made retroactively effective to run from August 25, 2015 to August 25, 2016. Since the sanction was imposed on March 20, 2017, it was, in effect, no sanction at all."[57] Mr. Saravanan does not plead the University would have imposed a similar punishment upon a female student similarly found culpable of sexual harassment and stalking under similar circumstances. Mr. Saravanan did not accuse J.K. of sexual harassment or stalking and the University did not find her culpable of such conduct. Mr. Saravanan alleges "[o]n information and belief, a female student at [University] has never been disciplined, much less expelled, for

8

alleged sexual misconduct,"[58] but the University did not discipline or expel Mr. Saravanan for alleged sexual misconduct.

Absent pleading the University treated a female student in a similar circumstance more favorably than Mr. Saravanan, we cannot infer gender bias in the University's disciplinary proceedings and subsequent punishment against Mr. Saravanan.

### 3. Mr. Saravanan does not allege facts under an archaic assumption theory.

Mr. Saravanan attempts to plead a Title IX claim under an archaic assumption theory alleging "[The University's] institutionalized gender bias against males bringing accusations of sexual assault against females results from classifications based on archaic assumptions that leads to erroneous outcomes favoring females over males."[59]

The archaic assumption standard is applicable "only in cases alleging that a public school entity has denied equal opportunities to participate in athletic programs based on unfounded and antiquated historical notions about the physical capabilities of girls and boys."[60]

He pleads the University is a private university[61] and does not allege it denied him an equal opportunity to participate in athletic programs on the basis of his gender. This is not a case concerning discrimination in athletic programs.

### 4. Mr. Saravanan does not allege facts supporting a deliberate indifference theory.

Mr. Saravanan argues the University exhibited deliberate indifference toward his claim J.K. sexually assault him. He alleges the University received notice of his complaints, conducted a flawed investigation, and implemented an inequitable and unfair punishment indicative of gender bias in favor of females.[62]

Deliberate indifference claims may proceed when "a plaintiff seeks to hold an institution liable for sexual harassment and requires the plaintiff to demonstrate that an official of the

9

institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct."[63] Deliberate indifference is characterized as "an official decision by [the institution] not to remedy the violation"[64] Deliberate indifference typically applies when "a school has ignored a victim's complaint of sexual harassment or assault."[65] To establish deliberate indifference, the university's response to the claimed gender bias must be "clearly unreasonable in light of the known circumstances."[66] Deliberate indifference may apply "when intentional discrimination has occurred in a case where a student has relied on Title IX to challenge either the initiation or the outcome of a disciplinary proceeding."[67]

Mr. Saravanan is not clear if deliberate indifference applies to the institution and outcome of the University's proceedings against him or to the University's actions with respect to his sexual assault claims against J.K. In *Doe v. The Trustees of the University of Pennsylvania*, the court found deliberate indifference may apply when a victim alleges a school ignored a complaint of sexual harassment.[68] The court in *University of Pennsylvania* found the complaint "based solely on an assertion that [p]laintiff advanced arguments of gender bias and other procedural flaws in the adversarial disciplinary proceeding and [the institution] rejected them" failed to state a deliberate indifference claim.

As in *Doe,* a deliberate indifference theory is inappropriate here if Mr. Saravanan is claiming gender bias in the manner the University conducted its institutional proceedings.[69] If Mr. Saravanan is alleging a deliberate indifference theory the University ignored his sexual assault complaint, he must allege facts indicating he reported a sexual assault and the University ignored his complaints.[70] Mr. Saravanan does not seem to allege the University ignored his sexual assault claim, but rather he is dissatisfied with the implementation and outcome of the

University's disciplinary proceedings against J.K.[71] He alleges J.K. received a lesser punishment of "Disciplinary Probation made retroactively effective to run from August 25, 2015 to August 25, 2016. Since the sanction was imposed on March 20, 2017, it was, in effect, no sanction at all."[72] It is unclear why the University imposed this sanction on J.K., but Mr. Saravanan admits the University responded to his complaint rather than ignoring it. Absent plead facts, Mr. Saravanan's dissatisfaction with the process and outcome of the University's disciplinary proceedings of his sexual assault claims does not indicate deliberate indifference.

## B. Mr. Saravanan fails to allege facts supporting his Title VI claim.

Mr. Saravanan claims the University deprived him of benefits and subjected him to discrimination on the basis of his race and national origin under Title VI.[73] Title VI of the Civil Rights Act provides, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance."[74] A plaintiff need not demonstrate discrimination *via* direct evidence.[75] To show a *prima facie* Title VI claim, Mr. Saravanan must demonstrate: "(1) were members of a protected class, (2) were qualified for the educational benefit or program at issue, (3) and that they suffered an adverse action, (4) which occurred *under circumstances giving rise to an inference of discrimination*."[76] He must allege "'intentional discrimination,' which may be supported by allegations of either discriminatory animus or deliberate indifference."[77] "The 'central focus' of the p*rima facie* case 'is always whether the employer is treating "some people less favorably than others because of"' race or national origin.[78]

Mr. Saravanan has not pled sufficient facts "giving rise to an inference of discrimination" the University's actions against him occurred because of his membership in a protected class as

11

our court of appeals required in *Blunt v. Lower Merion School District*.[79] He adequately pled he is a member of a protected class on the basis of his race (South Asian) and national origin (Indian). His status as an enrolled student at the University qualified him for educational benefits, including the proper disciplinary and adjudicatory proceedings administered by the University. He alleges the University receives federal funding and is bound by Title VI.[80] Mr. Saravanan claims he suffered adverse action, including:

> (i)    "Denying [Mr. Saravanan] services and access to financial aid given to other students.
>
> (ii)    Giving [Mr. Saravanan] different services than those given to other students.
>
> (iii)    Segregating and treating [Mr. Saravanan] separately from the other students.
>
> (iv)    Treating [Mr. Saravanan] differently from other students, including those white males facing allegations of sexual assault, in terms of his enrollment.
>
> (v)    Denying [Mr. Saravanan's] ability to participate in [University's] programs including ancillary academic activities like the sports facilities and social spaces."[81]

But, fatal to his claim, Mr. Saravanan fails to allege facts demonstrating the University imposed these preclusions on him because of his membership in a protected class.

In *Blunt,* the court found a claim brought under Title VI must allege facts "the defendant engaged in intentional discrimination."[82] Mr. Saravanan does not allege facts indicating the University's intentional discrimination, but rather states mere conclusions "[The University] has discriminated against [Mr. Saravanan], on the basis of his race and national origin, through discriminatory, race-based implementation of [the] University's policies and procedures that comparators, white males also accused of assault, did not experience."[83] Mr. Saravanan claims

he, a South Asian and Indian male, received different treatment from the University than "white male sexual assault respondents and white female respondents," particularly J.K, a white female.[84] Allegations of different treatment alone are not enough to survive a motion to dismiss. The facts must show "intentional discrimination."[85] He must allege different treatment *because of* race or national origin to state a Title VI claim.[86] Mr. Saravanan does not allege facts of the University basing its treatment of him on his race or national origin.

## C. Mr. Saravanan does not plead facts supporting his § 1981 claim.

Mr. Saravanan claims his race and national origin motivated the University's handling of his sexual assault complaint and the investigation, disciplinary proceedings, and punishment imposed against him.[87]

Under § 1981 of the Civil Rights Act, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."[88] To state a § 1981 claim, Mr. Saravanan must plead: (1) he "belongs to a racial minority; (2) 'an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in,'" such as in contractual relationships.[89] A defendant's actions must be "purposefully discriminatory [...] and racially motivated."[90]

Mr. Saravanan pleads he is a male United States citizen "of South Asian race and Indian national origin who has a contract with [the University] to obtain education, to be protected from sexual harassment both as complainant and respondent, and to receive housing."[91] He alleges, "[The University] investigated, evaluated and suspended [him] based on an inherently false

13

complaint from [J.K.], herself a white complainant, while completely ignoring [his] complaint of the same act against [J.K.]. In that process [the University] suppressed evidence and applied different standards for [Mr. Saravanan] and to [J.K.] because of his race."[92]   Mr. Saravanan alleges "[The University] also evicted [him] once and segregated him from the educational environment, something not done to white respondents of sexual assault claims including, specifically," J.K.[93]

These conclusory allegations will not suffice. In *Albert v. Caronavo*, the court dismissed the plaintiff's § 1981 claim finding "[t]he naked allegation that appellees 'selectively enforc[ed] the College rules ... against plaintiffs ... because they are black [or] Latin' is too conclusory to survive a motion to dismiss."[94]  The court in *Yusuf v. Vassar College* similarly dismissed a § 1981 claim as "conclusory" and found the plaintiff "has offered no reason to suspect that his being found guilty of sexual harassment had anything to do with his race, other than his assertion that the panel members were white and that he is Bengali."[95]

As in *Albert* and *Yusuf*, Mr. Saravanan's allegations the University applied its policies against him "because of his race" are conclusive and do not show "an intent to discriminate on the basis of race" by University.[96]  The mere fact J.K. is a different race than Mr. Saravanan and did not receive the same sanction from the University does not demonstrate "an intent to discriminate on the basis of race" by the University as required to satisfy a §1981 claim. Mr. Saravanan fails to allege facts indicating his race motivated the University's disciplinary actions against him.

## D.  We decline supplemental jurisdiction over the remaining state law claims.

Mr. Saravanan's remaining claims of breach of contract and unfair trade practices arise under Pennsylvania law.   Under 28 U.S.C.A. § 1367(a), "the district courts shall have

supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[97] A district court "may decline to exercise supplemental jurisdiction over a claim" when "all claims over which it has original jurisdiction" are dismissed.[98] In *Elkadrawy v. Vanguard Group, Inc.*, the district court declined to exercise supplemental jurisdiction over the plaintiff's state law claims after it dismissed the Title VII claim.[99] Once the federal claims are dismissed, a court can decline to exercise supplemental jurisdiction over the remaining state claims under 28 U.S.C.A. § 1367.[100] When a district court dismisses a claim it has original jurisdiction before trial, the court "*must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."[101]

As shown, Mr. Saravanan fails to plead federal law claims under Title IX, Title VI, and Section 1981 of the Civil Rights Act. Absent federal questions, including in an amended complaint, we decline to exercise supplemental jurisdiction over his remaining state law claims of breach of contract and unfair and deceptive trade practices.

## III. Conclusion

After a 2016 investigation into allegations of his misconduct during a dysfunctional personal relationship with a white female classmate, Drexel University sanctioned both Mr. Saravanan and white female classmate J.K. but decided to expel him but not her. He pleads 275 paragraphs seeking to impose civil rights liability without pleading facts indicating the investigation, adjudication and expulsion had anything to do with his gender, race or national origin. Rather, he pleads adverse results and asks we leap to discriminatory animus simply because of different outcomes for the two former friends based on different allegations.

15

Drexel University moves to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), under Fed. R. Civ. P. 8, and moves to strike under Fed. R. Civ. P. 12(f).[102] In the accompanying Order, we grant the University's motion. Mr. Saravanan unloads too much ink in 275 largely duplicative and conclusory allegations challenging the University's expulsion of him after its investigation and adjudicatory processes when it did not expel his former personal friend also sanctioned arising from conduct arising from their relationship. He has not shown the University acted in a manner violating federal law. He does not plead facts to allow us to understand the University's investigation, adjudication and eventual expulsion is based upon his gender, race or national origin.

He may be able to do so consistent with Federal Rules of Civil Procedure 8 and 11 and we will grant him leave to do so. Absent a timely amendment, we will close this case without opining on his remaining state law claims of breach of contract and unfair trade practices which he may be able to assert in state court.

---

[1] ECF Doc. No. 1 at ¶ 8.

[2] *Id.* at ¶ 15.

[3] *Id.* at ¶ 18.

[4] *Id.* at ¶ 23, 30.

[5] *Id.* at ¶ 57(c).

[6] *Id.* at ¶ 23.

[7] *Id.* at ¶ 32.

[8] *Id.* at ¶ 33.

[9] *Id.* at ¶ 42.

16

[10] *Id.* at ¶ 49 (a)-(b).

[11] *Id.* at ¶ 31.

[12] *Id.* at ¶ 17.

[13] *Id.* at ¶ 36.

[14] *Id.* at ¶ 36.

[15] *Id.* at ¶ 58.

[16] *Id.* at ¶ 52-53, 63.

[17] *Id.* at ¶ 63.

[18] *Id.* at ¶ 60.

[19] *Id.* at ¶ 61.

[20] *Id.* at ¶ 79, 81-172.

[21] *Id.* at ¶ 81.

[22] *Id.* at ¶ 83.

[23] *Id.* at ¶ 89, 90.

[24] *Id.* at ¶ 93-94.

[25] *Id.* at ¶ 97.

[26] *Id.* at ¶ 29.

[27] *Id.* at ¶ 6.

[28] *Id.* at ¶ 79.

[29] *Id.* at ¶ 79.

[30] In deciding a motion to dismiss under Rule 12(b)(6), we accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party, but we "are not compelled to accept unsupported conclusions and unwarranted inference, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir. 2017) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'" *Edinboro Coll. Park Apartments v. Edinboro Univ. Found.*, 850 F.3d 567, 572 (3d Cir. 2017) (quoting *In re Vehicle Carrier Serv. Antitrust Litig.*, 846 F.3d 71, 79 n.4 (3d Cir. 2017)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Maiden Creek Assoc., L.P. v. U.S. Dep't of Transp.*, 823 F.3d 184, 189 (3d Cir. 2016) (quoting *Ascroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[31] ECF Doc No.1 at ¶ 159.

[32] 20 U.S.C. § 1681(a).

[33] *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994).

[34] *Winter v. Pennsylvania State University*, 172 F.Supp.3d 756, 776 (M.D.Pa. 2016).

[35] *Yusuf*, 35 F.3d at 713.

[36] ECF Doc No.1 at ¶ 183.

[37] *Yusuf*, 35 F.3d at 715.

[38] *Id.*

[39] *Id.*

[40] *Doe v. Univ. of Penn.*, No. 16-5088, 2017 WL 4049033, at *15 (E.D.Pa. Sept. 13, 2017) (quoting *Yusuf*, 35 F.3d at 715). *See also Harris v. St. Joseph's Univ.*, Civ. A. No. 13-3937, 2014 WL 12618076, at *2 n.3 (E.D. Pa. Nov. 26, 2014)(citation omitted)(complaint claiming a university "adopted a policy favoring female accusers as [the university] was concerned about Title IX charges by female students" sufficiently alleged gender bias); *Doe v. Brown Univ.*, 166 F. Supp. 3d 177, 189 (D.R.I. 2016)(complaint sufficiently claimed gender bias when it alleged (1) a former university employee stated the university treats male students "guilty, until proven innocent" and assumed "it's always the 'boy's fault,'" (2) a professor stated "'there is gender bias that is overwhelming at Brown' when referencing sexual misconduct cases at Brown," and (3) a

University professor agreed that the "culture of thinking" on the campus is that "males are 'bad'" and "females are 'victims'")

[41] ECF Doc No.1 at ¶¶ 35, 45, 52, 78-79, and 81-85.

[42] *Yusuf,* 35 F.3d at 713.

[43] *Doe,* 2017 WL 4049033, at \*15.

[44] *See e.g.,* ECF Doc No.1 at ¶ 22 ("Drexel's sex-based and race-motivated animus against him"), ¶ 23 ("sex-based and race-motivated animus"), ¶ 25 ("sex and/or race motivated discriminatory actions"), ¶ 29 ("Drexel's systemic animosity"), ¶ 35 ("outrageous race and sex tinged animus"), ¶ 36 ("As Drexel knew from the start of its discriminatory conduct"), ¶ 39 ("Drexel acted with race and sex based animus"), ¶ 40 ("systemic racism and sexism against men of color"), ¶ 41 ("racist and sexist animus"), ¶ 47 ("Drexel exhibited race and gender biases"), ¶ 57 ("male and race biases"), ¶ 69 ("an arcane assumption on male conduct, and a pervasive bias towards plaintiff's sex and race"), ¶ 83 ("adopting a gender archaic and racist attitude that a man of color like Plaintiff is a sexual predator"), ¶ 85 ("a perfect show of Drexel's gender and racial biases"), ¶ 89 ("it only prosecutes rape where the alleged victim is female, and that it favors whites over minorities in all cases"), ¶ 96(b) ("Drexel favors the white woman even at the expense of the life of the man of color"), ¶ 97 ("race and sex biases"), ¶ 99 ("potentially sexist or racist"), ¶ 103 ("racial and sexual biases"), ¶ 105 ("seemingly based upon sex and motivated by race"), ¶ 106 ("gender and/or raced biased treatment"), ¶ 117 ("biasedly treated Plaintiff because of his race and sex"), ¶ 121 ("outrageous gender and race biases"), ¶ 121(b) ("Rupprecht enhancing Plaintiff's punishment to either vent his own animosity against men of color like Plaintiff, or to satisfy the Drexel presidential mandate to become a Title IX leaders transmogrifying that goal into this lynching."), ¶ 124 ("race and gender based disparate treatment"), ¶ 134 ("sex-based and race-motivated bias"), ¶ 135 ("sex and race based biases"), ¶ 137 ("sex-based and race-motivated patterns of decision making"), ¶ 144 ("race and sex based animus"), ¶ 149 ("biases against men of color"), ¶ 158 ("clear sex-based and race-motivated bias"), ¶ 160 ("race and sex biases").

[45] ECF Doc No.1 at ¶ 70.

[46] Mr. Saravanan's extensive reliance upon Judge Padova's recent cogent analysis in *Doe* highlights the deficiencies in his present pleading. Unlike *Doe,* Mr. Saravanan does not plead facts of favor to females over males or relating specifically to this investigation and expulsion. Instead, he pleads a series of bad results for him and concludes these results are attributable to his race, gender and national origin. The University's alleged conduct is not tied to discriminatory animus; rather Mr. Saravanan alleges the University's decisions adversely affect him but does not plead facts plausibly allowing us to infer a nexus between the adverse decisions and his race, gender or national origin.

[47] *Id.* at ¶ 190.

[48] *Yusuf,* 35 F.3d at 715.

[49] *Tafuto v. N.J. Inst. of Tech.*, Civ. A. No. 10–4521, 2011 WL 3163240, at *2 (D.N.J. July 26, 2011) (quoting *Mallory v. Ohio Univ.,* 76 Fed. Appx. 634, 641 (6th Cir.2003)).

[50] *Harris v. Saint Joseph's Univ.*, 2014 WL 1910242, at *4 (E.D.Pa. May 13, 2014) (quoting *Scott v. Worldstarhiphop, Inc.,* 2011 WL 5082410, *4 (S.D.N.Y.2011)(quoting *Yusuf*, 35 F.3d at 715.)).

[51] ECF Doc No.1 at ¶¶ 121(a)-(e), 122-125, 202, 204

[52] *Yusuf*, 35 F.3d 709, 716 (court dismissed selective enforcement theory claim when plaintiff, a Bengali male, based his claim on college's failure to give a white male student an equivalent punishment without alleging facts plaintiff's gender motivated his punishment).

[53] *Yusuf*, 35 F.3d at 716.

[54] *Id.*

[55] ECF Doc No.1 at ¶ 169.

[56] *Id.* at ¶ 25(e).

[57] *Id.* at ¶ 79.

[58] *Id.* at ¶ 202.

[59] *Id.* at ¶ 208.

[60] *Doe v. Baum*, 227 F.Supp.3d 784, 821 (E.D.Mich. 2017) (citing *Doe v. Cummins*, 662 Fed.Appx. 437, 451, n.9 (6th Cir. 2016)). *See also Mallory v. Ohio Univ.*, 76 Fed.Appx. 634 (6th Cir. 2003)

[61] ECF Doc No.1 at ¶ 9.

[62] *Id.* at ¶¶ 207-217.

[63] *Mallory*, 76 Fed.Appx. at 638 (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (1998)).

[64] Harden v. Rosie 99 A.3d 950, 956 (Pa. Commwlth. Ct. 2014) (quoting *Gebser v. Kago Vista Independent School Dist.*, 524 U.S. 274, 290 (1998)).

[65] *Brown Univ.*, 166 F.Supp.3d at 191.

[66] *Doe v. Brown Univ.*, 166 F.Supp.3d 177, 190–91 (D.R.I. 2016) (quoting *Doe v. Univ. of the South*, 687 F.Supp.2d 744, 757 (E.D.Tenn. 2009)).

[67] *Doe*, 2017 WL 4049033, at \*21 (quoting *Mallory*, 76 Fed.Appx. at 638-39). *See also Brown Univ.*, 166 F.Supp.3d at 191 (deliberate indifference is typically raised when an institution ignored a complaint of sexual harassment or assault); *Univ. of the South*, 687 F.Supp.2d at 757 (deliberate indifference claim dismissed when facts failed to allege university's actions constituted sexual harassment).

[68] *Doe*, 2017 WL 4049033, at \*17-18.

[69] *Doe*, 2017 WL 4049033, at \*21.

[70] *Doe v. Brown Univ.*, 166 F.Supp.3d at 190–91.

[71] ECF Doc No.1 at ¶ 208-217.

[72] *Id.* at ¶ 79.

[73] *Id.* at ¶ 220.

[74] 42 U.S.C. § 2000d.

[75] *Blunt v. Lower Merion School Dist.*, 767 F.3d 247, 275 (3d Cir. 2014).

[76] *Blunt*, 767 F.3d at 275 (citing *Blunt v. Lower Merion School Dist.*, 826 F.Supp.2d 749, 758 (E.D.Pa. 2011) *(emphasis added)*.

[77] *Doe*, 2017 WL 4049033, at \*21 (citing *David v. Neumann Univ.*, 177 F. Supp. 3d 920, 927 (E.D. Pa. 2016)

[78] *Sarullo v. U.S. Postal Service*, 352 F.3d 789, 798 (3d Cir. 2003) (quoting *Pivirotto v. Innocative Systems, Inc.*, 191 F.3d 344, 352 (3d Cir. 1999).

[79] *Blunt*, 767 F.3d at 275.

[80] ECF Doc No.1 at ¶187.

[81] *Id.* at ¶ 222(i)-(v)

[82] *Blunt*, 767 F.3d at 275 (citing *Guardians Assoc. v. Civil Serv. Comm'n of N.Y,*, 463 U.S. 582, 597, 607 (1983).

[83] ECF Doc No.1 at ¶ 221.

[84] *Id.* at ¶ 223.

[85] *Blunt*, 767 F.3d at 275 (citing *Guardians Assoc.*, 463 U.S. at 597, 802).

[86] *Doe*, 2017 WL 4049033, at *21 (citing *Neumann Univ.*, 177 F.Supp. at 927).

[87] ECF Doc No.1 at ¶¶ 240-245.

[88] 42 U.S.C.A. § 1981.

[89] *Pryor v. National Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002) (citing *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir. 2001).

[90] *Albert v. Carovano*, 851 F.2d 561, 571 (2d Cir. 1988).

[91] ECF Doc No.1 at ¶ 232.

[92] *Id.* at ¶ 234.

[93] *Id.* at ¶ 235.

[94] *Albert*, 851 F.2d at 572.

[95] *Yusuf*, 35 F.3d at 714.

[96] *Pryor*, 288 F.3d at 569 (citing *Brown*, 250 F.3d at 797).

[97] 28 U.S.C.A. § 1367(a).

[98] 28 U.S.C.A. § 1367(c)(3).

[99] *Elkadrawy v. Vanguard Group, Inc.*, 584 F.3d 169, 174 (3d Cir. 2009).

[100] *Elkadrawy v. Vanguard Group, Inc.*, 584 F.3d 169, 174 (3d Cir. 2009).

[101] *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir. 1995)).

[102] The University moved to dismiss under Fed. R. Civ. P. 12(f). While we need not address the Rule 12(f) request in light of our findings, we are granting Mr. Saravanan leave to amend his Complaint one last time and remind counsel to comply with Fed R. Civ. P. 8 and refrain from use of pejoratives, most notably "lynching."