| KARTHIK SARAVANAN | : CIVIL ACTION |
| | : |
| v. | : |
| | : NO. 17-3409 |
| DREXEL UNIVERSITY | : |
| | : |

## MEMORANDUM

**KEARNEY, J.**                                                    **November 24, 2017**

Universities managing disciplinary processes evaluating freshmen students' conduct in a dysfunctional romance must strive to ensure fairness including avoiding inherent bias or procedures which may favor a woman's claim of sexual harassment and stalking over a man's claim of sexual assault by the woman. We appreciate the disciplinary process is painstakingly difficult in the he-said/she-said drama of a failed romance between college freshmen. But in affording this process, the university must work to ensure accessing and resolving highly charged sexual misconduct claims does not differ based on the gender of the complaining student.

After dismissing his unwieldly complaint with leave to file an amended complaint, we now review a male student's amended civil rights claim arising from a university's alleged discriminatory treatment and disposition of his former partner's claim against him resulting in his expulsion. While still not entirely clear, he now pleads a plausible civil rights claim under a Title IX erroneous outcome theory. After two attempts, the male student still does not plead a Title IX claim under selective enforcement or deliberate indifference theories. He also does not plead claims based on his race, color or national origin requiring we dismiss his Title VI and Section 1981 claims. Proceeding on one Title IX theory, we exercise supplemental jurisdiction over his breach of contract and unfair trade practices act claims subject to discovery.

## I.    Alleged Facts[1]

Karthik Saravanan, a male South Asian of the Indian race, challenges Drexel University's decision to expel him for stalking and sexually harassing a white female fellow freshman student, J.K., with whom he maintained a romantic relationship.[2]    Drexel investigated sexual misconduct claims from Mr. Saravanan and J.K.  Drexel reached different results: expelling Mr. Saravanan and imposing retroactive probation on J.K.

Referring to the statements of the Honorable Carolyn Engel Temin, Appeal Adjudicator, Mr. Saravanan alleges Drexel imposed a harsher sanction upon him than J.K. as he "was given a sanction of Expulsion from Drexel effective March 20, 2017 [while J.K.] was given a sanction of Disciplinary Probation retroactively effective to run from August 25, 2015 to August 25, 2016. Since the sanction was imposed on March 20, 2017, it was, in effect, no sanction at all."[3]  Mr. Saravanan claims Drexel discriminated against him on the basis of his race and sex when it "was deliberately indifferent to [his] initial reports and to [his] sworn in Court testimony that J.K. sexually assaulted him [...] and later Drexel knew of J.K.'s admission that she had 'misbehaved' and that [he] said 'no,'[4] instituted the disciplinary proceedings against him,[5] and imposed an excessively severe" sanction on him compared to Drexel's retroactive probation for J.K.[6]

Mr. Saravanan argues he "alleges facts to support a presumption of a pattern of gender discrimination suggesting gender bias flawed the disciplinary process against him and in J.K.'s favor."[7]  He claims this gender bias is not limited to his own proceeding and refers to a "deeply biased document" distributed by Drexel's Public Safety titled "Date Rape/Acquaintance Rape" detailing "Drexel's pro-female and anti-male bias" by portraying women as victims of sexual assault and men as perpetrators.[8]  The document provides "Advice for Women" to avoid rape while providing "Advice for Men" to "[t]hink about whether you really want to have sex with a

women who does not want to have sex with you."[9] Mr. Saravanan alleges Drexel's "staff training materials for taking reports and carrying out investigations of on campus sexual assault [...] inherently portray the woman as the victim of the man."[10]

### A. Mr. Saravanan's claim against J.K. results in her retroactive probation.

Mr. Saravanan claims J.K. sexually assaulted him on August 18, 2015 and then "stalked and abused [him] to keep quiet about her assaulting him," including "threatening to tell their social group that [he] was mentally disabled or a homosexual," manipulating him into buying her gifts, and engaging in "a pattern of bullying, stalking, ridiculing, and terrorizing, including slapping him, in order to prevent him from reporting to Drexel."[11] He claims J.K. admitted to the sexual assault in a Snapchat.[12]

Mr. Saravanan claims he reported the assault to Drexel "at least two times," but Drexel's Office of Equality and Diversity[13] "responded that the complaints could not be investigated unless the other victims came forward."[14] At some point, Mr. Saravanan claims he obtained a protection from abuse order against J.K., which she later violated.[15] When he provided Robert Lis, a member of Drexel's staff, with service of process documents to be served on J.K. for violation of the protection from abuse order, Mr. Lis allegedly responded: "I don't think we do that for guys, I am pretty sure that's for girls only, but let me check that and I will get back to you."[16] Mr. Saravanan claims he "extensively reported his experience of being the victim of J.K.'s sexual assault and stalking" to Drexel's staff, and Mr. Lis stated "he was in the wrong office to file his report of sexual abuse against J.K. and thus did nothing to protect him other than send him to the Philadelphia Police, SVU."[17] He alleges Mr. Lis also stated "'I have never heard of a' female raping a male."[18] Mr. Saravanan alleges Drexel charged him with "retaliation against J.K. when all [he] did was follow standard court procedure after J.K. violated her

3

[protection from abuse order] and stalked" him.[19] Mr. Saravanan alleges Michelle Rovinsky, one of Drexel's "staff trainers" asked him "'are you here to stalk J.K.?' when he visited Drexel's Title IX office to report J.K.'s sexual assault.[20]

Mr. Saravanan claims he reported the sexual assault allegations to at least seven Drexel employees "with authority to institute corrective measures given Mr. Saravanan's reports" and each individual "was deliberately indifferent to his report of that misconduct and his request for and right to be protected from J.K."[21] Mr. Saravanan alleges Drexel chose to "do nothing" in response to his claims against J.K.[22]

Mr. Saravanan alleges several of Drexel's employees who had authority during the disciplinary proceedings made statements indicating gender bias against him as a male reporting a female for sexual assault.[23] He claims one university official classified his rape claim as "ludicrous" and said "she had 'never heard of a woman raping a man.'"[24] During the proceeding, Jena Perez, a university official, asked Mr. Saravanan "why was your penis erect then? Doesn't that mean that you enjoyed it?" when he "reported his rape experience to her."[25] He also claims Ms. Perez "took out, omitted, or otherwise failed to investigate the information" Mr. Saravanan's witnesses during the proceeding offered in favor of him and against J.K.[26] Mr. Saravanan alleges Ms. Perez asked one of his witnesses "gender biased questions" including if the witness "had ever done anything like this to women" and "if he agreed that J.K. was the victim."[27] He claims Ms. Perez asked another witness if Mr. Saravanan "generally assaulted women."[28]

### B. J.K.'s claims result in Mr. Saravanan's expulsion.

Mr. Saravanan alleges J.K. (at some undefined time) "falsely accused [him] of sexually harassing and of stalking J.K." and Drexel responded by instituting a disciplinary hearing against

4

him.[29] Following his disciplinary proceeding, Drexel found him guilty and expelled him.[30] Mr. Saravanan, after two attempts, does not plead other facts regarding to progress or nature of the hearing on J.K.'s claims against him.

## II.    Analysis[31]

In his first complaint, Mr. Saravanan sued Drexel under Title IX and Title VI along with state law claims. We dismissed Mr. Saravanan's original federal claims for failing to adequately plead a federal claim and declined to exercise supplemental jurisdiction over his state law claims.[32] We provided Mr. Saravanan "one last chance to amend, if he can in good faith, to plead facts of discriminatory intent and animus necessary to proceed on civil rights claims."[33] Having reduced the rhetoric, Mr. Saravanan filed an amended complaint alleging: (1) Title IX – reverse discrimination; (2) Title IX – deliberate indifference to Mr. Saravanan's sexual assault and sexual hostility reports; (3) Title VI; (4) Section 1981 of the Civil Rights Act; (5) breach of contract; and (6) unfair and deceptive trade practices.[34] Drexel now moves to dismiss his claims.[35]

### A. We deny Drexel's motion to dismiss Mr. Saravanan's Title IX claim based solely on the erroneous outcome theory.

Mr. Saravanan claims Drexel's actions before, during, and after the disciplinary hearing constituted discrimination on the basis of his gender in violation of Title IX. He alleges three Title IX theories: (1) erroneous outcome, (2) selective enforcement, and (3) deliberate indifference.[36] Under Title IX of the Education Act Amendments of 1972, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[37] Title IX prohibits universities from imposing "discipline where gender is a motivating factor in the decision to discipline."[38] In bringing a Title IX claim, a plaintiff must

allege facts the university discriminated against him *because of sex*.[39] Recitation of "conclusory assertions" is insufficient in claiming discrimination on the basis of race or sex against a university.[40] As a male, Mr. Saravanan claims reverse discrimination.[41] To plead reverse discrimination, Mr. Saravanan must show "evidence permitting a fact finder to conclude that the employer is treating some people less favorably than other people, based upon gender."[42]

### 1. Mr. Saravanan pleads a claim under erroneous outcome theory.

Mr. Saravanan must allege he is "innocent and wrongly found to have committed an offense" to plead a Title IX erroneous outcome theory claim.[43] In reviewing Drexel's proceedings, we may not "advocate for best practices nor [...] retry disciplinary proceedings."[44] Mere allegations a flawed proceeding "led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination" does not satisfy an erroneous outcome claim.[45] Mr. Saravanan must allege "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding."[46] Facts stating an erroneous outcome claim include, "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender."[47]

Mr. Saravanan need not necessarily allege "arguably inculpatory statements by a representative of the [u]niversity." In *Doe v. The Trustees of the University of Pennsylvania*, a male student claimed discrimination on the basis of gender against the university during its disciplinary proceedings against him after a female student accused him of rape.[48] The court looked at the plaintiff's allegations of gender bias in the training materials provided to university employees and possible bias in favor of complainants of sexual assault on the part of the university's officials and concluded "taken together and read in the light most favorable to the

6

[p]laintiff," the complaint "set forth sufficient circumstances suggesting inherent and impermissible gender bias to support a plausible claim" under erroneous outcome theory.[49]

Mr. Saravanan claims because of his gender, "Drexel deprived him of his Title IX rights" and "imposed sanctions on [him] that were excessively severe and to the benefit of J.K. because of her sex in violation of Title IX."[50] He also claims Drexel knew of J.K.'s admission to the sexual assault in a Snapchat and still failed to properly investigate and charge her.[51] Mr. Saravanan pleads "the two OED employees who took his telephone report, Ms. Spiller, Mr. Lis, Ms. Perez, Mr. Rupprecht and Ms. Rovinsky, is a Drexel employee with authority to institute corrective measures given Mr. Saravanan's reports."[52] Mr. Saravanan alleges Drexel charged him "with retaliation against J.K. when all [he] did was follow standard court procedure after J.K. violated" the Protection From Abuse order and refers to Mr. G.R.'s statement Mr. Saravanan called 911 when J.K. violated the order.[53] He claims Ms. Spiller, who is either a Drexel official or a member of Drexel's disciplinary proceeding, characterized his rape claim as "ludicrous" and told him and his attorney she has "never heard of a woman raping a man."[54] Mr. Saravanan alleges Ms. Spiller "acted as J.K.'s de-facto attorney" and informed him in writing she would not assist him and "chose to assist J.K. against him."[55]

Mr. Saravanan alleges Mr. Robert Lis similarly stated "I have never heard of a" female raping a male to Mr. Saravanan and characterized Mr. Saravanan's sexual assault report as "it just seems to me like he [...] is trying to get back at her [J.K.]."[56] Mr. Saravanan alleges during a meeting, Mr. Lis admitted Mr. Rupprecht held a similar opinion.[57] He also claims Mr. Lis stated, "I've been doing this for thirty years and I've never heard of a guy his age being so scared of a girl."[58] Mr. Saravanan alleges when he approached Mr. Lis with "service of process documents to be served on J.K. as a result of her violation of the [protection from abuse order],

and told him he needed protection from her, which Mr. Lis refused to provide, stating with a gender biased deliberate indifference: 'I don't think we do that for guys, I am pretty sure that's for girls only, but let me check that and I will get back to you.'"[59]

He also claims Michelle Rovinsky asked him "are you here to stalk J.K.?" when he visited Drexel's Title IX office to report J.K.'s sexual assault.[60] He pleads Ms. Rovinsky is one of Drexel's "staff trainers" and the "staff training materials for taking reports and carrying out investigations on campus sexual assault [...] inherently portray the woman as the victim of the man."[61] He claims Drexel did not properly train its staff to not "[fall prey to its gender and race biases."[62]

Referring to the statements of witnesses Mr. M.L. and Mr. G.R., Mr. Saravanan alleges Jena Perez "asked gender biased questions" including if M.L. "had ever done anything like this to other women" and if Mr. G.R. and Mr. Saravanan "generally assaulted women."[63] He claims Ms. Perez asked him, "why was your penis erect then? Doesn't that mean that you enjoyed it?" when he reported the assault.[64] He alleges Ms. Perez asked Mr. M.L. "if he agreed that J.K. was the victim."[65] Mr. Saravanan claims Ms. Perez also "took out, omitted, or otherwise failed to investigate and record the information that Mr. M.L. and Mr. G.R. told Ms. Perez to be put into the report; this information favored [him] and disfavored J.K."[66]

Mr. Saravanan cites to a "deeply biased document" distributed by Drexel's Public Safety titled "Date Rape/Acquaintance Rape" detailing "Drexel's pro-female and anti-male bias" by portraying women as victims of sexual assault and men as perpetrators.[67] The document provides "Advice for Women" to avoid rape while providing "Advice for Men" to "[t]hink about whether you really want to have sex with a women who does not want to have sex with you."[68]

Mr. Saravanan's allegations taken together indicate a possible culture of gender bias

against males claiming sexual assault by females. Similar to the university in *Doe*, where the court concluded the plaintiff's allegations of gender bias by the university's staff taken together plead a Title IX erroneous outcome claim, Mr. Saravanan's allegations of the staff's statements and alleged response to his claims against J.K. indicate Drexel's gender bias against Mr. Saravanan claiming sexual assault against a female. Mr. Saravanan's allegations against Drexel are arguably more egregious than the plaintiff's allegation in *Doe* as Mr. Saravanan alleges multiple statements from a number of Drexel's staff "with the authority to institute corrective measures"[69] indicating gender bias against male complainants of sexual assault. The statements and actions of Drexel's employees, one of whom is a staff trainer,[70] coupled with the alleged response, or lack thereof, of Drexel's OED office to his complaint against J.K., and Drexel's "Date/Acquaintance Rape" publication suggest "gender bias was a motivating factor behind the erroneous finding" in Mr. Saravanan's and J.K.'s disciplinary proceedings.[71]

## 2. Mr. Saravanan does not plead a Title IX selective enforcement theory.

Mr. Saravanan again fails to plead a selective enforcement claim against Drexel. In a selective enforcement case, he must plead "regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender."[72] A male plaintiff must allege "a female was in circumstances sufficiently similar to his own and was treated more favorably" by the university.[73] To consider a student similarly situated, "the individuals with whom a plaintiff seeks to be compared *must have engaged in the same conduct* without such differentiating or mitigating circumstances that would distinguish their conduct or the [school's] treatment of them for it.'"[74]

Mr. Saravanan must allege "circumstances suggesting that gender bias was a motivating factor behind the inconsistency" in the university's disciplinary proceedings.[75] In *Yusuf v.*

9

*Vassar College*, a Bengali male plaintiff failed to plead a selective enforcement theory claim when he alleged he received a greater punishment from a university for sexual harassment than a white male accused of physically attacking him.[76] The court concluded the plaintiff failed to allege facts indicating a bias on the basis of gender and, at best, the facts allege the panel in the white male's disciplinary proceeding "displayed an unusual tolerance of physical violence," which does not equate to selective enforcement.[77]

Mr. Saravanan's reliance on *Doe v. Amherst College*[78] to argue he and J.K. are similarly situated comparators is inapposite. While the *Amherst College* case involves a similar dysfunctional male-female relationship, its facts are distinguishable. In *Doe v. Amherst College*, a male and female student allegedly engaged in sexual activity while intoxicated and accused each other of sexual assault.[79] The court concluded the plaintiff pled selective enforcement theory because the university encouraged the female student to file a formal complaint against the male student, but did not provide the same encouragement for the male student or even investigate his claims even though he alleged the same conduct against the female student arising out of the same circumstances.[80]

Mr. Saravanan concedes he and J.K. "did not accuse each other of the same conduct."[81] He claims, "he was falsely accused of sexually harassing and of stalking J.K."[82] and alleges J.K. "was found guilty of sexually harassing" him.[83] Mr. Saravanan claims J.K. is a "'similarly situated' comparator," but does not allege Drexel charged and disciplined J.K. for stalking, only sexual harassment.[84] It is unclear from the complaint if Mr. Saravanan accused J.K. of stalking in the disciplinary process. Without alleging Drexel charged and disciplined J.K. or another female with the same conduct it charged him, Mr. Saravanan is unable to plead a Title IX selective enforcement claim.[85]

10

### 3. Mr. Saravanan fails to plead a Title IX deliberate indifference claim.

Mr. Saravanan fails to plead a Title IX claim under the deliberate indifference theory. Deliberate indifference claims may proceed when "a plaintiff seeks to hold an institution liable for sexual harassment and requires the plaintiff to demonstrate that an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct."[86] Deliberate indifference is characterized as "an official decision by [the institution] not to remedy the violation"[87] In *Doe v. Brown University*, the court held deliberate indifference typically applies when "a school has ignored a victim's complaint of sexual harassment or assault."[88] The court held to establish deliberate indifference, the university's response to the claimed gender bias must be "clearly unreasonable in light of the known circumstances.'"[89] Deliberate indifference may apply "when intentional discrimination has occurred in a case where a student has relied on Title IX to challenge either the initiation or the outcome of a disciplinary proceeding."[90]

Deliberate indifference claims impose a significant burden on the plaintiff and consequently rarely proceed beyond a motion to dismiss.[91] In *Wells v. Xavier University*, a court denied a motion to dismiss a deliberate indifference claim in a case where a university enabled a disciplinary proceeding to go forward against a student accused of rape even after the prosecutor warned the allegations were unfounded.[92] The court concluded the university's president allowed the "defective hearing" to proceed "with the goal of demonstrating […] that Xavier was taking assault allegations seriously."[93] The court found the complaint indicated the defendant university had "adequate notice" to the claim the university's president "was deliberately indifferent to the [p]laintiff's rights."[94]

Mr. Saravanan does not plead facts similar to the claims in *Wells* to satisfy a Title IX

claim under the deliberate indifference theory. Unlike in *Wells*, where the university instituted disciplinary proceedings even after the prosecutor informed the university of the falsity of the accusations against the plaintiff, Mr. Saravanan does not allege the university instituted the disciplinary action against him under similar circumstances or outright ignored his allegations against J.K. Mr. Saravanan does not plead Drexel's actions against him occurred under circumstances where the university had reason to believe the accusations against him were false, like the plaintiff in *Wells*, but rather he disputes the severity of the punishment he received in comparison to J.K.'s punishment.[95]

His claims also indicate Drexel took some disciplinary action against J.K., even if J.K. received a lesser punishment.[96] While deliberate indifference often applies when a university ignores an individual's complaints of sexual assault,[97] Mr. Saravanan has not plead facts showing Drexel outright ignored his complaints of sexual assault against J.K. Mr. Saravanan alleges Drexel chose to "do nothing" in response to his claims against J.K.,[98] but pleads J.K. "was found guilty of sexually harassing [him] and not expelled," which indicates Drexel did in fact respond to his complaints and institute some disciplinary proceeding against her.[99] Mr. Saravanan has not met the significant burden of pleading a Title IX deliberate indifference claim.

### B. Mr. Saravanan fails to allege Drexel discriminated against him on the basis of his race, color, or national origin in violation of Title VI.

Mr. Saravanan's allegations do not plead Title VI discrimination. Title VI of the Civil Rights Act provides, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance."[100] A plaintiff need not demonstrate discrimination through direct evidence.[101] To show a *prima facie* Title VI claim, Mr. Saravanan must plead he was a member of a protected class qualified for the

12

educational benefit or program at issue and he suffered an adverse action occurring "*under circumstances giving rise to an inference of discrimination*."[102]   Mr. Saravanan must allege "'intentional discrimination,' which may be supported by allegations of either discriminatory animus or deliberate indifference."[103]   "The 'central focus' of the *prima facie* case 'is always whether the employer is treating "some people less favorably than others because of'" race or national origin.[104]

Mr. Saravanan again fails to allege Drexel intentionally discriminated against him on the basis of his race.  His pleadings satisfy the first three elements of a *prima facie* Title VI claim: (1) he, a South Asian individual of the Indian race, is a member of a protected class;[105] (2) as a student at Drexel, he qualified for the educational benefit at issue;[106] and (3) he suffered an adverse action through his expulsion, "handcuffing and [removal] from his dorm," segregation from campus, and the posting "on campus a flyer with many forms of identifiable information about him like his name, student ID number, and face."[107]  But Mr. Saravanan fails to plead the fourth and final requirement of a *prima facie* Title VI claim: he suffered the adverse action "*under circumstances giving rise to an inference of discrimination*."[108]

He again repeatedly and conclusively alleges Drexel discriminated against him on the basis of his race without pleading facts showing how Drexel's conduct against him gave rise to an inference of discrimination.[109]   He claims Drexel's staff used "race-bigoted statements" and "race-prejudiced, enabling statements," without pleading the statements.[110]  He alleges only Mr. Lis said something to him about "English lessons," but does not plead the context of this statement or what Mr. Lis actually said to him to indicate its "race-prejudiced" intention.[111]  Mr. Saravanan also pleads he is a native English speaker.[112]

Mr. Saravanan claims "on information and belief," Drexel "treats non-Indian respondents

to disciplinary procedures like this one better than it treated" him, but does not plead facts.[113] He claims "on information and belief that non-minority respondents of sexual assault, stalking, or their combination are treated better than he was treated as he responded to these charges,"[114] but then references only the disparity in punishment he received in comparison to J.K. without alleging facts this disparity occurred "*under circumstances giving rise to an inference of discrimination.*"[115]

Mr. Saravanan's blanket claim "[s]chools in the US such as Drexel have a pattern of intentional discrimination against male students of color like Mr. Saravanan by applying harsher discipline to them than to their white comparators" is conclusive and does not indicate Drexel discriminated against him on the basis of his race in his disciplinary proceeding.[116] The article he references to support this claim addresses racial disparities in school disciplinary proceedings generally, but does not name Drexel or any of its representatives.[117] Mr. Saravanan does not plead facts of Drexel deliberately discriminating against him on the basis of his race. We have no fact evidencing intent to harm him in the disciplinary process because he is of a different race than his former girlfriend or the Drexel investigators. He fails to plead a claim under Title VI.

### C. Mr. Saravanan fails to plead facts supporting his § 1981 claim.

Mr. Saravanan claims Drexel violated "its own contract and policy" by investigating, evaluating, and disciplining him while ignoring his allegations against J.K. "because of intentional animosity towards his race."[118] Under of the Civil Rights Act, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every

14

kind, and to no other."[119] To assert a § 1981 claim, Mr. Saravanan must plead: (1) he "belongs to a racial minority; (2) 'an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in,'" such as in contractual relationships, to adequately plead a claim under § 1981.[120] A defendant's actions must be "purposefully discriminatory […] and racially motivated."[121]

In *Albert v. Caronavo*, the court dismissed the § 1981 claim because "[t]he naked allegation that appellees 'selectively enforc[ed] the College rules ... against plaintiffs ... because they are black [or] Latin' is too conclusory to survive a motion to dismiss."[122] The court in *Yusuf v. Vassar College* similarly dismissed a § 1981 claim as "conclusory" and found the plaintiff "has offered no reason to suspect that his being found guilty of sexual harassment had anything to do with his race, other than his assertion that the panel members were white and that he is Bengali."[123]

Similar to the plaintiff in *Yusuf*, whose § 1981 claim rested on the fact the university panel members were of a different race than he, [124] Mr. Saravanan claims "Drexel's staff involved in the charge, investigation, and punishment phases of this matter, all of them White or Latino, showed racist animosity."[125] He also concludes Drexel favored J.K. over him during the disciplinary proceedings because she is white.[126] This broad conclusion lacks factual support other than he and J.K. are of different races or the Drexel investigators were of a different race. This conclusory allegation of race based discrimination based solely on different races is insufficient.

Mr. Saravanan attempts to show Drexel's intent to discriminate by referencing to an article addressing racial disparities in school disciplinary proceedings generally, as well as two other cases involving students similarly claiming Drexel applied harsher discipline to them on

the basis of their race and gender.[127] The referenced article does not name Drexel or specifically address Drexel's disciplinary proceedings and we are unable to use this material to assess whether Drexel purposefully discriminated against Mr. Saravanan on the basis of his race. Similarly, we are unable to assess the nature and conclusions of the two cases brought by students against Drexel because Mr. Saravanan's reference to these two cases does not show Drexel's disciplinary proceedings against *him* were "purposefully discriminatory [...] and racially motivated."[128]

As he did in his original complaint, Mr. Saravanan again conclusively alleges Drexel acted against him with racial animus, but fails to plead facts showing Drexel purposefully discriminated against him because of his race.

### D. We exercise supplemental jurisdiction over Mr. Saravanan's breach of contract and unfair and deceptive trade practices claims.

Drexel moves to dismiss the remaining state law claims arguing we lack jurisdiction if we dismiss the federal claims. It does not challenge the substance of these claims in the Amended Complaint.

Mr. Saravanan's claims for breach of contract and violation of the Pennsylvania Uniform Trade Practices and Consumer Protection Law arise under Pennsylvania state law. A district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."[129] When a district court has original jurisdiction over a claim, it may exercise " supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[130] The state law claims must share "a common nucleus of operative fact" in order for the federal court to exercise supplemental jurisdiction.[131] In *Young v. Pleasant Valley School District*, the district court denied a motion to dismiss a Title

IX claim and exercised supplemental jurisdiction over the related Pennsylvania state law negligent supervision claim.[132] We elect to do the same.

Mr. Saravanan's state law claims for breach of contract and violation of the Pennsylvania Uniform Trade Practices and Consumer Protection Law arise under the same facts as his Title IX claim. For the convenience of the parties, we will exercise jurisdiction over the state law claims.

## III. Conclusion

Mr. Saravanan challenges Drexel's manner of investigating and resolving allegations of his misconduct following a failed personal relationship with a female student. Following an internal disciplinary process, Drexel expelled Mr. Saravanan. He initially claimed Drexel's expulsion is based on gender, race and national origin discrimination in the broadest and conclusory fashion. We dismissed his initial complaint. After granting him leave to amend, Mr. Saravanan now pleads a Title IX erroneous outcome theory claim based on gender bias motivating Drexel's investigation and expulsion sanction. While Mr. Saravanan's alleged facts indicate bias on the basis of gender, he fails to plead Drexel discriminated against him on the basis of his race, color, or national origin in violation of Title VI or § 1981. As we will proceed into discovery on the Title IX claim and absent a substantive challenge to his breach of contract and deceptive trade practices claims, we exercise supplemental jurisdiction over Mr. Saravanan's state law claims. In the accompanying Order, we grant Drexel's motion to dismiss in part and deny in part.

[1] Mr. Saravanan's amended complaint continues his pleading style of rhetoric and conclusions rather than a short and plain statement of his claim. Pleading under Rule 8 is not a speech or editorial. He offers little or no chronology and our recitation of plead facts is based on our best understanding of the events affecting him in a chronology we can discern.

[2] ECF Doc. No. 14.

[3] *Id.* at ¶ 18.

[4] *Id.* at ¶ 75.

[5] *Id.* at ¶ 63, 86.

[6] *Id.* at ¶ 71.

[7] *Id.* at ¶ 17.

[8] *Id.* at ¶ 19; ECF Doc. No. 14-14.

[9] ECF Doc. No. 14-14.

[10] *Id.* at ¶ 21.

[11] *Id.* at ¶¶ 31-32, 40.

[12] *Id.* at ¶ 36.

[13] Mr. Saravanan refers to "OED" in the complaint, but does not define the acronym. We understand OED refers to Drexel's Office of Equality and Diversity.

[14] ECF Doc. No. 14 at ¶ 32.

[15] *Id.* at ¶ 34.

[16] *Id.*

[17] *Id.* at ¶ 35.

[18] *Id.* at ¶ 14.

[19] *Id.* at ¶ 12.

[20] *Id.* at ¶ 15.

[21] *Id.* at ¶ 37.

[22] *Id.* at ¶ 33.

[23] *Id.* at ¶ 37.

[24] *Id.* at ¶ 13.

[25] *Id.* at ¶ 16.

[26] *Id.* at ¶ 17.

[27] *Id.* at ¶ 16.

[28] *Id.*

[29] *Id.* at ¶ 38.

[30] *Id.* at ¶¶ 28, 29, 58, 103.

[31] In deciding a motion to dismiss under Rule 12(b)(6), we accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party, but we "are not compelled to accept unsupported conclusions and unwarranted inference, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir. 2017) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Edinboro Coll. Park Apartments v. Edinboro Univ. Found.*, 850 F.3d 567, 572 (3d Cir. 2017) (quoting *In re Vehicle Carrier Serv. Antitrust Litig.*, 846 F.3d 71, 79 n.4 (3d Cir. 2017)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Maiden Creek Assoc., L.P. v. U.S. Dep't of Transp.*, 823 F.3d 184, 189 (3d Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).
Our Court of Appeals requires we apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[32] ECF Doc. No. 12.

[33] *Id.* at 1.

[34] ECF Doc. No. 14.

[35] ECF Doc. No. 15.

[36] ECF Doc. No. 14 at ¶¶ 9-37, 59-80.

[37] 20 U.S.C. § 1681(a).

[38] *Yusuf v. Vassar Coll.,* 35 F.3d 709, 715 (2d Cir. 1994).

[39] *Winter v. Penn. State Univ.*, 172 F.Supp.3d 756, 776 (M.D.Pa. 2016).

[40] *Yusuf,* 35 F.3d at 713.

[41] ECF Doc. No. 14 at ¶¶ 9-22, 59-73.

[42] *Kahan v. Slippery Rock Univ. of Penn.*, 50 F.Supp.3d 667, 687 (W.D.Pa. 2014).

[43] *Id.* at 715.

[44] *Yu v. Vassar College*, 97 F.Supp.3d 448, 461 (S.D.N.Y. 2015).

[45] *Kahan*, 50 F.Supp.3d at 715.

[46] *Id.*

[47] *Doe v. Univ. of Penn.*, No. 16-5088, 2017 WL 4049033, at *15 (E.D.Pa. Sept. 13, 2017) (quoting *Yusuf,* 35 F.3d at 715). *See also Harris v. St. Joseph's Univ.*, No. 13-3937, 2014 WL 12618076, at *2 n.3 (E.D. Pa. Nov. 26, 2014)(citation omitted)(complaint claiming a university "adopted a policy favoring female accusers" because the university "was concerned about Title IX charges by female students" sufficiently pled gender bias); *Doe v. Brown Univ.*, 166 F. Supp. 3d 177, 189 (D.R.I. 2016)(complaint alleged gender bias when it pled: (1) a former university employee stated the university treats male students "guilty, until proven innocent" and assumed "it's always the 'boy's fault,'" (2) a professor stated "'there is gender bias that is overwhelming at Brown' when referencing sexual misconduct cases at Brown," and (3) a University professor agreed that the "culture of thinking" on the campus is that "males are 'bad'" and "females are 'victims'")

[48] *Univ. of Penn.*, 2017 WL 4049033, at *15-16.

[49] *Id.* (plaintiff alleged: (1) the university established its disciplinary procedures to favor females complainants and disfavor respondents, most of whom are male; (2) the university's women's center published guidelines for students on its sexual violence policy referring to complainants of sexual assault as "victims/survivors;" (3) university personnel publicly advocated for colleges

20

and universities to "strengthen protection of victims by engaging in 'victim-centered respons[es];'" (4) training materials given to the university's staff involved in disciplinary proceedings encouraged employees to "believe the accuser and presume the accused's guilt;" (5) the university implemented pro-complainant policies in response to criticism it received "for not taking the complaints of female students sufficiently seriously.")

[50] ECF Doc. No. 14 at ¶¶ 69-71.

[51] *Id*. at ¶ 10, 40.

[52] *Id*. at ¶ 37.

[53] *Id*. at ¶ 12.

[54] *Id*. at ¶ 13.

[55] *Id*. at ¶¶ 12-13.

[56] *Id*. at ¶ 14.

[57] *Id*.

[58] *Id*.

[59] *Id*. at ¶ 34.

[60] *Id*. at ¶ 15.

[61] *Id*. at ¶ 21.

[62] *Id*. at ¶ 53.

[63] *Id*. at ¶ 16.

[64] *Id*.

[65] *Id*.

[66] *Id.* at ¶ 17.

[67] *Id*. at ¶ 19; ECF Doc. No. 14-14.

[68] ECF Doc. No. 14-14.

[69] ECF Doc. No. 14 at ¶ 37.

[70] *Id.* at ¶ 21.

[71] *Kahan*, 50 F.Supp.3d at 715.

[72] *Yusuf,* 35 F.3d at 715.

[73] *Tafuto v. N.J. Inst. of Tech.*, No. 10–4521, 2011 WL 3163240, at *2 (D.N.J. July 26, 2011) (quoting *Mallory v. Ohio Univ.,* 76 Fed. Appx. 634, 641 (6th Cir.2003)).

[74] *Ke v. Drexel Univ.*, No. 11-6708, 2015 U.S. Dist. LEXIS 118211, at *59 (E.D. Pa. Sept. 4. 2015) (quoting *Bailey v. United Airlines*, No. 97-5223, 2002 U.S. Dist. LEXIS 11636, at *9 (E.D. Pa. June 26, 2002))(*emphasis added*).

[75] *Harris*, 2014 WL 1910242, at *4 (quoting *Scott v. Worldstarhiphop, Inc.,* No. 10 Civ. 9538, 2011 WL 5082410, *4 (S.D.N.Y.2011)(quoting *Yusuf*, 35 F.3d at 715.)).

[76] *Yusuf,* 35 F.3d at 716.

[77] *Yusuf,* 35 F.3d at 716.

[78] While we are mindful of the arguments addressed in his reply brief, Mr. Saravanan has not pled he and J.K. are similarly situated for the selective enforcement theory to apply. Discovery may allow a good faith pleading of alternative theories under Fed.R.Civ.P. 15 but they are not pled in the amended complaint.

[79] *Doe v. Amherst College*, 238 F.Supp.3d 195, 208-210 (D. Mass. 2017).

[80] *Amherst College*, 238 F.Supp.3d at 223.

[81] ECF Doc. No. 14 at ¶ 24.

[82] *Id.* at ¶ 38.

[83] *Id.* at ¶ 23.

[84] *Id.*

[85] *Ke,* 2015 U.S. Dist. LEXIS 118211, at *59.

[86] *Mallory*, 76 Fed.Appx. at 638 (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (1998)).

[87] *Harden v. Rosie* 99 A.3d 950, 956 (Pa. Commwlth. Ct. 2014)(quoting *Gebser v. Kago Vista Independent School Dist.*, 524 U.S. 274, 290 (1998)).

[88] *Doe v. Brown Univ.*, 166 F.Supp.3d 177, 191 (D.R.I. 2016).

[89] *Brown Univ.*, 166 F.Supp.3d at 190–91 (quoting *Doe v. Univ. of the South*, 687 F.Supp.2d 744, 757 (E.D.Tenn. 2009)).

[90] *Univ. of Penn.*, 2017 WL 4049033, at *21 (quoting *Mallory*, 76 Fed.Appx. at 638-39). *See also Brown Univ.*, 166 F.Supp.3d at 191 (deliberate indifference is usually raised when an institution ignored a sexual harassment or assault complaint); *Univ. of the South*, 687 F.Supp.2d at 757 (deliberate indifference claim dismissed because facts failed to show university's actions constituted sexual harassment).

[91] *Brown Univ.*, 166 F.Supp.3d at 191 ("The only case of which the Court is aware in which a deliberate indifference claim has been allowed to go forward in a case like this one is *Wells* [*v. Xavier University*].")

[92] *Wells v. Xavier Univ.*, 7 F.Supp.3d 746, 751 (S.D. Ohio 2014).

[93] *Id.*

[94] *Id.*

[95] ECF Doc. No. 14 at ¶¶ 18, 23, 24, 26, 27, 28, 29, 30, 41, 43, 44, 45, 51, 53, 55, 63, 71, 79, 86, 94, 95, 97, 103, 110.

[96] *Id.* at ¶ 18.

[97] *Brown Univ.*, 166 F.Supp.3d at 191.

[98] ECF Doc. No. 14 at ¶ 33.

[99] *Id.* at ¶ 23.

[100] 42 U.S.C. § 2000d.

[101] *Blunt v. Lower Merion School Dist.*, 767 F.3d 247, 275 (3d Cir. 2014).

[102] *Blunt*, 767 F.3d at 275 (citing *Blunt v. Lower Merion School Dist.*, 826 F.Supp.2d 749, 758 (E.D.Pa. 2011)(emphasis added).

[103] *Univ. of Penn.*, 2017 WL 4049033, at *21 (citing *David v. Neumann Univ.*, 177 F. Supp. 3d 920, 927 (E.D. Pa. 2016)

[104] *Sarullo v. U.S. Postal Service*, 352 F.3d 789, 798 (3d Cir. 2003)(quoting *Pivirotto v. Innocative Systems, Inc.*, 191 F.3d 344, 352 (3d Cir. 1999).

[105] ECF Doc. No. 14 at ¶¶ 2, 93.

[106] *Id.* at ¶ 2.

[107] *Id.* at ¶¶ 27-30, 41, 43, 45, 54, 83-90, 94.

[108] *Blunt*, 767 F.3d at 275 (citing *Lower Merion School Dist.*, 826 F.Supp.2d at 758)(*emphasis added*).

[109] *See e.g.*, ECF Doc. No. 14 at ¶ 39 ("Drexel staff involved in the charge, investigation, and punishment phases of this matter, all of them White or Latino, showed racist animosity against Mr. Saravanan"), ¶ 41 ("race-motivated antagonistic pattern of decision making [...] Drexel consistently treated him as a dangerous man of color"), ¶ 43 ("Drexel acted with intent to discriminate against him based on his race"), ¶ 45 ("motivated by animosity to his race"), ("intentionally racist sanction"), ¶ 83 ("Drexel has deprived Plaintiff on the basis of his race [...] and national origin [...] of his rights to due process and to equal protection through the improper, malicious, racist, or deliberately indifferent application of its policies"), ¶ 84 ("Drexel has discriminated against Plaintiff, on the basis of his race and national origin, through discriminatory, race-based implementation of Drexel's policies and procedures"), ¶ 85 ("Drexel has violated Plaintiff's rights to be free from race based discrimination"), ¶ 94 ("intentional animosity towards his race"), ¶ 95 ("Drexel [...] treats non-Indian respondents to disciplinary processes like this one better than it threated plaintiff"), ¶ 96 ("Drexel treated Plaintiff in a discriminatory manner [...] under a racial motivation"), ¶ 97 ("Plaintiff's race and national origin were motivating factors").

[110] ECF Doc. No. 14 at ¶ 39.

[111] *Id.*

[112] *Id.*

[113] *Id.* at ¶ 95.

[114] *Id.* at ¶ 45 ("Drexel's better treatment is believed to involve Drexel's practice of offering the responding student the opportunity to withdraw and keep a clean academic record rather than go through the disciplinary process. Drexel did not make that offer to Mr. Saravanan at least in part motivated by animosity to his race and that constitutes the origin of the more severe, intentionally racist sanction he experienced.").

[115] *Blunt*, 767 F.3d at 275 (citing *Lower Merion School Dist.*, 826 F.Supp.2d at 758)(*emphasis added*)).

[116] ECF Doc. No. 14 at ¶ 42.

[117] *Id.*

[118] *Id.* at ¶ 94.

[119] 42 U.S.C.A. § 1981.

[120] *Pryor v. National Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002)(citing *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir. 2001).

[121] *Albert v. Carovano*, 851 F.2d 561, 571 (2d Cir. 1988).

[122] *Id.*

[123] *Yusuf*, 35 F.3d at 714.

[124] *Id.*

[125] ECF Doc. No. 14 at ¶ 39.

[126] *Id.* at ¶¶ 40, 43, 94, 97.

[127] *Id.* at ¶ 42.

[128] *Albert*, 851 F.2d at 571.

[129] 28 U.S.C. § 1331.

[130] 28 U.S.C.A. § 1367.

[131] *Sarpolis v. Tereshko*, 625 Fed.Appx. 594, 598 (3d Cir. 2016)(citing *Sinclair v. Soniform, Inc.,* 935 F.2d 599, 603 (3d Cir.1991)).

[132] *Young v. Pleasant Valley School Dist.*, No. 3:07cv854, 2008 WL 417739, \*2 (M.D.Pa. Feb. 13, 2008).